UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | No. 10-329 |
| TEDRICK REYNARD | SECTION I |

### ORDER & REASONS

Before the Court is defendant Tedrick Reynard's ("Reynard") *pro se* motion[1] for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), in which he also requests appointment of counsel. The government opposes the motion.[2] The Court denies both the request for appointed counsel and the motion for compassionate release for the following reasons.

### I.

On January 24, 2013, Reynard pleaded guilty to conspiracy to violate the Racketeering Influence and Corrupt Organizations Act, 18 U.S.C. § 1962(d); conspiracy to distribute and to possess with intent to distribute 280 grams or more of cocaine base, 21 U.S.C. § 846; conspiracy to possess firearms in furtherance of a crime of violence and drug trafficking crimes, 18 U.S.C. § 924(o); distribution of a quantity of cocaine base, 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C); and possession with intent to distribute a quantity of cocaine base, *id.*[3] Reynard is currently serving a

---

[1] R. Doc. No. 772.
[2] R. Doc. No. 786.
[3] *See* R. Doc. No. 378.

168-month sentence at FCI Yazoo City Medium ("Yazoo City"); his projected release date is January 7, 2024.[4]

Reynard requests compassionate release under 18 U.S.C. § 3582(c)(1)(A).[5] He provides a copy of his request for compassionate release dated November 1, 2020, which was addressed to his warden.[6]

Reynard argues that the risk of contracting COVID-19 at Yazoo City, combined with his alleged pre-existing medical conditions, constitute "extraordinary and compelling" reasons warranting his release.[7] Reynard argues that his "years of smoking, [Body Mass Index] of 30+, and family history of high blood pressure" put him at a high risk of contracting a severe case of COVID-19.[8] He claims that he is at greater risk of contracting COVID-19 because of Yazoo City's failure to follow infectious disease protocols.[9] And, in a further attempt to show that extraordinary and compelling reasons justify his release, Reynard argues that the factors enumerated in 18 U.S.C. § 3553(a) and his post-sentencing rehabilitation efforts are themselves extraordinary and compelling.[10] Along that same line, Reynard argues

---

[4] *Inmate Locator*, BOP, https://www.bop.gov/inmateloc/ (last visited June 25, 2021).
[5] R. Doc. No. 772.
[6] R. Doc. No. 772-1, at 2. ("I am now asking you to use [the authority of a warden] to [g]rant me a [c]ompassionate [r]elease or [h]ome [c]onfinement due to my health risks, security, and safety.").
[7] R. Doc. No. 772, at 4–10, 21.
[8] *Id.* at 4–5.
[9] *Id.* at 6–9.
[10] R. Doc. No. 772, at 10–16.

2

"new law" mandates that he would have received a shorter sentence if sentenced today, which is also extraordinary and compelling.[11]

In response, the government contends that Reynard has not adequately exhausted his administrative remedies because he failed to include in his request to the warden a proposed release plan, which justifies dismissing his motion without prejudice.[12] Alternatively, the government argues that Reynard's motion should be denied on the merits because the reasons he cites for his release are not extraordinary and compelling.[13] It explains that, although Reynard alleges he suffers from medical conditions that may be extraordinary and compelling when viewed alongside the risk of contracting COVID-19, he has offered no evidence to show—and the government's independent evidence does not show—that Reynard actually suffers from such conditions.[14] Moreover, since Reynard is now fully vaccinated against COVID-19, the government argues that "[Reynard's] risk of a severe [case of COVID-19] has been substantially reduced."[15]

## II.

As noted, Reynard included in his motion a request for the appointment of counsel. The Court denies this request.

There is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to

---

[11] *Id.*
[12] R. Doc. No. 786, at 9–12.
[13] *Id.* at 15.
[14] *Id.* at 16.
[15] *Id.* (citing *United States v. Alvarez*, No. 18-298, 2021 WL 1270494, at *4 (S.D. Tex. Apr. 6, 2021).

appointed counsel extends to the first appeal of right, and no further."). In the context of 18 U.S.C. § 3582(c)(2) motions, which are analogous to 18 U.S.C. § 3582(c)(1) motions like Reynard's, "the Fifth Circuit has held that defendants have no statutory or constitutional right to counsel." *United States v. Joseph*, No. 15-307, 2020 WL 3128845, at *1 (E.D. La. June 12, 2020) (Vance, J.) (citing *United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995), and *United States v. Moore*, 400 F. App'x 851, 852 (5th Cir. 2010) (per curiam)).

"Although a defendant in a § 3582(c) motion does not have a statutory or constitutional right to appointment of counsel, the Court may appoint counsel in the interest of justice." *United States v. Mogan*, No. 14-040, 2020 WL 2558216, at *4 n.29 (E.D. La. May 20, 2020) (Morgan, J.) (quoting *United States v. Rodriguez*, No. 10-17, 2015 WL 13664966, at *2 (S.D. Tex. Aug. 20, 2015) (citing *United States v. Robinson*, 542 F.3d 1045, 1051–52 (5th Cir. 2008))); *see* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"). The interests of justice do not require that counsel be appointed where a "defendant's motion does not involve complicated or unresolved issues" or where a defendant proves capable of representing himself *pro se*. *See Joseph*, 2020 WL 3128845, at *2 (quoting *Moore*, 400 F. App'x at 852 (addressing a § 3582(c)(1)(A)(i) motion on appeal)) (internal citation and alterations omitted).

The interests of justice do not require that the Court appoint counsel for Reynard. The motion does not involve complicated or unresolved legal issues. It

involves primarily factual issues—namely, Reynard's medical conditions and other circumstances warranting his release—which Reynard proved fully capable of articulating for himself. Accordingly, the Court will deny Reynard's request for appointed counsel.

### III.

As for Reynard's motion for compassionate release: generally, "[t]he court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). This rule has some exceptions, which, under the First Step Act, may now be presented to the court upon a defendant's motion.[16] For such a motion to be properly before the court, the defendant must either exhaust all administrative remedies, or thirty days must elapse "from the receipt of [a compassionate release request] by the warden of the defendant's facility, whichever is earlier." *Id.*; § 3582(c)(1)(A).

The court "may" grant such a motion if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c). The court must also conclude, however, that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

---

[16] The First Step Act provided defendants a mechanism to unilaterally move for a sentence reduction; previously, the "Director of the Bureau of Prisons" needed to file the motion. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5193, 5239.

5

The most relevant policy statement is found in § 1B1.13 of the U.S. Sentencing Guidelines Manual. The Application Notes to that policy statement, in turn, provide four categories of extraordinary and compelling reasons: "(1) medical conditions, (2) age, (3) family circumstances, and (4) 'other reasons.'" *Thompson*, 984 F.3d at 433 (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)) (alterations omitted).

As noted above, the First Step Act provided a new avenue to request compassionate release. Previously, only the Director of the Bureau of Prisons ("BOP")—not defendants on their own—could move for compassionate release. The First Step Act changed that. However, the Sentencing Commission's policy statements have lagged behind. Because these policy statements have not been amended since the enactment of the First Step Act, portions of them contradict 18 U.S.C. § 3582(c)(1)(A). For example, the policy statement referenced above begins with, "[u]pon a motion by the Director of the Bureau of Prisons"—which implies that the entire statement applies only to such motions (and not those filed by defendants). U.S.S.G. § 1B1.13, Policy Statement; *see also id.* cmt. n.4 ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons[.]"); *see also United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (noting the discrepancy).

The Fifth Circuit recently clarified that "neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582." *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). Nonetheless,

6

the Fifth Circuit has also recognized that the policy statement may still "inform[] [its] analysis." *Thompson*, 984 F.3d at 433.

A prerequisite to granting compassionate release is that the defendant shows "extraordinary and compelling reasons warrant[ing]" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). *Shkambi* notwithstanding, the Sentencing Commission's policy statement may still "inform" this Court's analysis of whether Reynard has presented an extraordinary and compelling reason. *Thompson*, 984 F.3d at 433 (citing U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1); *United States v. Helmstetter*, No. 92-469, 2021 WL 310355, at *5 (E.D. La. Jan. 29, 2021) (Africk, J.); *Perdigao*, 2020 WL 1672322 at *2.

### A. Exhaustion of Administrative Remedies

Section 3582, as mentioned above, allows a court to consider a defendant's compassionate release motion only after the defendant exhausts administrative remedies, or 30 days elapse after the defendant submits a compassionate-release request to the warden. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement is "not jurisdictional but . . . *is* mandatory") (emphasis in original).

The government argues that Reynard failed to exhaust his administrative remedies because he did not submit a proposed release plan along with his compassionate release request to the warden.[17] This Court agrees.

The relevant BOP regulations provide that:

---

[17] R. Doc. No. 786, at 9–12 (citing *United States v. Murray*, No. 19-041, 2020 WL 4000858, at *4 (E.D. La. July 15, 2020) (Fallon, J.)).

> A request for a motion under . . . 3582(c)(1)(A) . . . shall *at a minimum* contain the following information:
>
> > (1) The extraordinary or compelling circumstances that the inmate believes warrant consideration.
> >
> > (2) *Proposed release plans*, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.

28 C.F.R. § 571.61 (emphasis added); *United States v. Murray*, No. 19-041, 2020 WL 4000858, at *4 (E.D. La. July 15, 2020) (Fallon, J.) (finding lack of administrative exhaustion where the defendant failed to submit his proposed release plans to the BOP).

Reynard's request to the BOP did not include any post-release plans, as required by the above regulatory provisions.[18] Accordingly, he has failed to fully exhaust his administrative remedies prior to filing the present motion. *Id.* Such a failure provides an independent basis for dismissing Reynard's motion. *United States v. Gonzalez*, 849 F. App'x 116, 117 (5th Cir. 2021) (declining to reach district court's denial on the merits where the district court alternatively denied the motion for failing to exhaust administrative remedies); *Franco*, 973 F.3d at 468 (holding that administrative exhaustion is "mandatory").

---

[18] R. Doc. No. 772-1, at 2 (Reynard's compassionate release request to the warden, which states, as to the requested relief and release plans, only that, "With the passing of the Cares Act and U.S. Attorney General Barr granting Warden's [sic] authorization to release inmates on compassionate release or release to home confinement, as opposed to going to the Director of the Bureau of Prisons, I am now asking you to use that authority to Grant [sic] me a Compassionate Release or Home Confinement due to my health risks, security, and safety. If no response, I will use this as my Remedy to now go before my Federal Judge.").

## B. Extraordinary and Compelling Reasons

Alternatively, the Court finds that Reynard has failed to carry his burden to prove extraordinary and compelling reasons warrant his release. *See United States v. Harmon*, 834 F. App'x 101, 102 (5th Cir. 2021) (affirming district court's denial of compassionate release motion, which was based alternatively on the defendant's failure to (1) exhaust administrative remedies and (2) prove extraordinary and compelling reasons). The Court denies Reynard's motion for the alternative reasons that follow.

The Sentencing Commission's policy statement "informs" this Court's analysis of whether Reynard has presented extraordinary and compelling reasons that justify his release. *Thompson*, 984 F.3d at 433 (citing U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1); *Perdigao*, 2020 WL 1672322 at *2. Again, the policy statement provides four categories of extraordinary and compelling reasons: "(1) medical conditions, (2) age, (3) family circumstances, and (4) 'other reasons.'" *Thompson*, 984 F.3d at 433 (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)) (alterations omitted). The defendant bears the burden of proving that extraordinary and compelling reasons exist. *United States v. Washington*, No. CR 16-19, 2020 WL 4000862, at *3 (E.D. La. July 15, 2020) (Morgan, J.); *see United States v. Gonzalez*, 819 F. App'x 283, 285 n.2 (5th Cir 2020).

Reynard has failed to meet his burden. He makes two main arguments: (1) his alleged medical conditions, combined with the risk of contracting COVID-19, are

9

extraordinary and compelling, and (2) "new law" constitutes extraordinary and compelling reasons. Neither argument has merit.

As for medical conditions: Reynard claims that he suffers from "an immune deficiency caused by years of smoking, [Body Mass Index] of 30+, and family history of high blood pressure."[19] But Reynard has not produced any evidence to support these claims,[20] and the last two years of Reynard's health records, which were provided by the government, do not substantiate his claims either.[21] According to those records, Reynard suffers from no medical condition that could render him more susceptible to contract or develop a severe case of COVID-19.[22] *United States v. Wells*, No. 17-104, 2021 WL 199386, at *3 (E.D. La. Jan. 20, 2021) (Barbier, J.) (concluding, after an exhaustive review of the defendant's medical records provided by the government, that the defendant had not carried his burden to show extraordinary and compelling reasons). And that possibility is itself mitigated by the fact that Reynard is now fully vaccinated against COVID-19.[23]

Therefore, Reynard has failed to prove that he suffers from a medical condition that is extraordinary and compelling. "[M]erely alleg[ing]" a serious

---

[19] R. Doc. No. 772, at 4.
[20] See generally id.
[21] *See generally* R. Doc. No. 786-2 (medical records, filed under seal).
[22] R. Doc. No. 786-2, at 5 (BOP Health Services record, listing Reynard's "Health Problems," none of which appear to be serious).
[23] *See id.* at 18–20 (stating that Reynard received his second dose of the "COVID-19 Pfizer-BioNTech" vaccine on March 30, 2021); *Benefits of Getting a COVID-19 Vaccine*, Centers for Disease Control & Prevention (updated June 15, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (stating that COVID-19 vaccines can "keep you from getting and spreading the virus that causes COVID-19," and "also help keep you from getting seriously ill even if you do get COVID-19").

medical condition is not enough—Reynard must back it up with evidence, and he has not. *Wells*, 2021 WL 199386, at *3; *see also United States v. Rivas*, 833 F. App'x 556, 559 (5th Cir. 2020) (requiring the defendant to "provide evidence" that he was not likely to recover from his medical conditions). At most, Reynard has pointed only to "[a] generalized fear of the virus, [which,] by itself, does not justify release." *United States v. Curry*, No. 10-111, 2020 WL 4201646, at *2 (E.D. La. July 22, 2020) (Vance, J.) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

As for Reynard's "new law" arguments: he argues that "there is a substantial probability that had Reynard been sentenced today, his sentence would be dramatically less/lower than his current 168-month sentence, based on current case law, new amendment, [sic] and new law."[24] He claims that three changes in the law constitute extraordinary and compelling reasons justifying compassionate release. The Court disagrees.

Reynard first points to *Alleyne v. United States*, 570 U.S. 99 (2013), arguing that any drug quantity used to enhance a statutory mandatory minimum sentence must be found by a jury.[25] That is true when the defendant is tried by a jury, but *Alleyne* has no applicability here, where Reynard pleaded guilty to the facts forming the basis of his enhanced statutory sentence. *Hurst v. Fla.*, 577 U.S. 92, 100 (2016) ("[A] judge may impose any sentence authorized 'on the basis of the facts reflected in the jury verdict *or admitted by the defendant.*'" (quoting *Blakely v. Washington,* 542 U.S. 296, 303 (2004)) (emphasis added)). Reynard admitted, in his

---

[24] R. Doc. No. 772, at 18–20.
[25] *Id.* at 19.

11

factual basis, the drug quantity on which his sentence was predicated.[26] *Alleyne* provides him no relief.

Reynard next argues that his base offense level should be two levels lower because of the "'Minus Two' Amendment 782," which qualifies as extraordinary and compelling.[27] The Court has already rejected this argument—and denied reconsideration—when Reynard raised it before.[28] It does so again today.

Finally, Reynard argues broadly that "Congress enacted the First Step Act to rectify wrongs. . . . The First Step Act changes the Court's original assessment of Reynard's Section 3553(a) factors and suggests that Reynard's sentence should be arbitrarily [sic] reduced."[29] But Reynard must still show extraordinary and compelling circumstances justifying his release—*before* the Court reaches the § 3553(a) factors. The First Step Act did not change that. *See* 18 U.S.C. § 3582(c)(1)(A) (forbidding sentence reductions unless, *inter alia*, "extraordinary and compelling reasons warrant such a reduction"); *Thompson*, 984 F.3d at 433 n.2 (noting that it need not consider the § 3553(a) factors where the defendant failed to demonstrate extraordinary and compelling reasons). Reynard has not done so.

Since Reynard has not established the existence of extraordinary and compelling reasons justifying release, the Court cannot grant the requested relief.

---

[26] R. Doc. No. 386, at 4 ("During the conspiratorial period, T. REYNARD distributed between 280 grams to 840 grams of cocaine base[.]").
[27] R. Doc. No. 772, at 19.
[28] R. Doc. No. 725, at 1 (finding that Reynard "remains ineligible pursuant to" *Koons v. United States*, 138 S. Ct. 1738 (2018)); R. Doc. No. 727 (denying reconsideration because "defendant remains legally ineligible").
[29] R. Doc. No. 772, at 20.

For that reason, the Court need not evaluate the sentencing factors under 18 U.S.C. § 3553(a).

## IV.

For the foregoing reasons,

**IT IS ORDERED** that Reynard's request for appointment of counsel is **DENIED**.

**IT IS FURTHER ORDERED** that Reynard's motion for compassionate release is **DENIED**.

New Orleans, Louisiana, June 29, 2021.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**